SEWERAGE DISTRICT No. 1 OF SILOAM SPRINGS v. BLACK.

Opinion delivered January 19, 1920.

1. MUNICIPAL CORPORATIONS—SEWERS—CONSTRUCTION.—It is the duty of the commissioners of a sewerage district to construct the sewer so that it will not become a nuisance to any neighborhood or to any particular inhabitant thereof; and it is the duty of the city, after the sewer has been turned over to it, to prevent it from becoming a nuisance by properly maintaining and repairing it.

2. MUNICIPAL CORPORATIONS — SEWERS AS NUISANCE.—A complaint against a sewerage district and a city which alleges that defendants have constructed and maintained a general system of sewerage and a disposal plant which sprays noxious odors in the air and discharges the sewage into a stream of fresh water running through plaintiffs' farm; that by such acts the stream is polluted so as to make the water unfit for animal or human use and to be filled with noisome smells and nests or beds for the incubation of mosquitoes; that defendants spray the sewage in a liquid form in the air near plaintiffs' dwellings, causing corruption of the atmosphere, noisome smells, flies, and mosquitoes; that by these acts the homes of plaintiffs are rendered disagreeable, uncomfortable and uninhabitable; that defendants are maintaining a nuisance, which is continuous and recurring, held to state a cause of action.

3. EMINENT DOMAIN—TAKING OF PROPERTY—REMEDY OF OWNER.—Under Constitution, article 2, section 22, if private property is taken, appropriated or damaged, for use of the public for sewerage purposes under Kirby's Digest, section 5664, the remedy of the owners would be an action at law; but where the complaint alleges that a sewer system, as maintained by defendants, constitutes a nuisance, and the answer denies such allegation, the issue is properly triable in equity.

4. MUNICIPAL CORPORATIONS—SEWER SYSTEM AS NUISANCE—BURDEN OF PROOF.—In a suit against a sewerage district and city to restrain the maintenance of a nuisance, plaintiffs met the burden of proof by showing the existence of a nuisance and that the proximate cause thereof was the sewerage system which defendants had constructed and were maintaining, and plaintiffs were not required to prove that the sewerage system was improperly constructed or maintained.

5. MUNICIPAL CORPORATIONS—SEWERAGE SYSTEM AS NUISANCE—EVIDENCE.—Evidence held to sustain finding of chancellor that defendants' sewerage system, as constructed and maintained, constitues a nuisance.

6.   MUNICIPAL CORPORATIONS — INJUNCTION — PARTIES.—In an action
against a sewerage district and city to restrain maintenance of
a nuisance, where the testimony shows that both city and district
were maintaining the nuisance, the court properly granted an
injunction against both district and city.

Appeal from Benton Chancery Court; *B. F. McMa-han*, Chancellor; affirmed.

*Tom Williams* and *A. L. Smith,* for appellants.

1.   The court erred in overruling the demurrer filed
by the city of Siloam Springs to the complaint.   There
was a clear misjoinder of parties defendant and plain-
tiffs had an adequate remedy at law.   113 Ark. 239.

2.   The court erred in overruling the motion of the
city to make the complaint more definite and certain.
Dillon on Mun. Corp., par. 1051-2 and 1051 A; 117 Am.
St. 749; 188 Miss. 456; 42 So. Rep. 204.

3.   The court erred in refusing to sustain a special
answer and plea in abatement filed by defendants as
plaintiffs had an adequate remedy at law.   22 Cyc. 771;
145 Pa. St. 324; 27 Am. St. 694; Dillon Mun. Corp., 1051-
1051 A, 1052; 117 Am. St. 749; 188 Miss. 456; 42 So. 204;
93 Ark. 362; 87 *Id.* 213; 92 *Id.* 538; 91 *Id.* 58; 85 *Id.* 544;
2 Dillon, Mun. Corp. (2 Ed.), par. 1046 and notes; 27 Am.
St. 694.

4.   The court erred in not dismissing the petition
for want of equity and in not finding for appellants upon
the evidence in the case.   It was not a nuisance to be en-
joined even if private parties were injured in their pri-
vate rights.   67 Am. Dec. 186; 22 Barb. (N. Y.) 297; 107
Am. St. 222; 53 N. Y. 55; Misc. Rep. 726; 5 Ohio N. P.
39; 107 Ark. 422.   All parts of the city were drained into
Salt Creek, a natural outlet; the sewer was properly
erected and maintained, and every precaution taken to
prevent noxious odors, pollution of water, air, etc.   153
Ind. 337.   Equity will not restrain where the power is law-
fully exercised and the greatest good to the greatest num-
ber of residents is attained and the work is skillfully done.
135 Ind. 547; 41 Am. St. ........; 110 Mass. 216; 14 Am. Rep.
592; 112 Ind. 542; 23 *Id.* 381.   See also 79 Ind. 491; 41

Am. St. 618; 17 Ind. 267; 14 *Id.* 399; 75 *Id.* 241; 39 Am. Rep. 135; 19 *Id.* 326; 7 Cush. 53-85; 121 Ind. 331-337; 14 Utah 47; 2 Story Eq. Jur. 925-928; High on Inj., § § 459, 483; Eden on Injunc., 231. The question of reasonableness is one of fact. 44 N. H. 580; 84 Am. Dec. 105; 15 N. W. 167. Cities as riparian owners are entitled to the reasonable use of a stream as an outlet for sewers, and if pollution occurs no liability occurs. 58 N. E. 142; 302 Pa. 474.

The sewer was constructed and operated in the most skillful manner, and if injury resulted injured parties were remitted to their remedies at law. *Supra.* 2 Edwards 188; 9 Paige 233; 4 *Id.* 444; 65 Conn. 365; 56 Ark. 205.

The decree is indefinite and uncertain in its directions and contradictory in its findings.

*R. F. Forrest, Verne McMillan and L. S. Forrest,* for appellee.

1. There was no error in overruling the demurrer, because it did not raise the point of defect of parties and plaintiff had no adequate remedy at law.

2. Nor did it err in overruling the motion to make more definite and certain, because it was sufficiently definite and there is no record of such a motion.

3. No error in refusing to sustain the so-called answer and plea in abatement, because a plea in abatement is no method to attack the jurisdiction of the court, and plaintiffs had no adequate remedy at law.

4. No error in overruling the motion to quash depositions of plaintiffs. The motion was not verified. The certificate of the notary shows they were duly sworn to, and all the defendants were present at the examination and cross-examination.

5. The court did not err in not dismissing for want of equity nor in finding against appellants upon the whole evidence, because a dangerous nuisance was proven and appellees' evidence was conclusive. The law is well settled in Arkansas and all other States except

perhaps Indiana. On these ponts and the others made
by appellant, see Kirby's Digest, § 6094; 33 Ark. 497;
2 Wood on Nuisances (3 Ed.), 1150-1174. The remedy at
law was not adequate, and there was a nuisance. 2 Wood
on Nuisances, 1174; 119 Cal. 387; 51 Pac. 557. It was
injurious to health and to property of plaintiffs. 84 Hun
281; 32 N. Y. Supp. 442.

Equity will enjoin the pollution of stream by sew-
age. 150 Ill. 273; 37 N. E. 218; 42 N. E. 77; or where it
is a nuisance. 46 Ark. L. R. 169; 119 Ark. 169; 2 Wood
on Nuisances (3 Ed.), 801, 1177.

6. A demurrer properly raises the question of ju-
risdiction. Kirby's Digest, § 6093.

7. It is no defense that a nuisance is properly con-
ducted or maintained carefully (102 Ark. 288), if it is
so built and used as to destroy the comfort of the owners
and occupants of adjoining property-holders. 85 Ark.
544-552. The law does not authorize the dumpage of
sewage on appellee's premises. 103 Ark. 270.

8. Where a party appears, he can not object that
no legal notice was given. 9 Ark. 518.

9. The statements of witnesses may be written by
any one the officer calls to do the writing. Kirby & Cas-
tle's Digest, § 3407; 86 Ark. 259. The depositions were
duly sworn to and certified.

10. The court properly refused to sustain the spe-
cial plea in abatement.

11. The court did err in not dismissing the petition
for want of equity, but did not err in finding for appel-
lees on the whole case. A dangerous nuisance was
proven. 102 Ark. 288; 85 Id. 553-4; 5 Pom. Eq. Jur.,
§ § 539, etc.; 93 Ark. 53; 77 Am. St. Rep. 335; 92 S. W.
931-2; 42 Am. St. 367; 50 Id. 158; Spelling on Inj. (2 Ed),
§ 676; 15 Cyc. 728; 54 Ark. 144; Kirby's Dig., § 3965;
63 Pac. 557; 60 S. W. 593; 47 S. W. 70; High on Inj.
(4 Ed.), § § 746, 773-4; 119 Ark. 169. The acquiring of the
right-of-way by condemnation does not give the right to
maintain a nuisance. 93 Ark. 53; 77 Am. St. 53; 92 S.
W. 931; 119 Ark. 169. Nor does an ordinance authorize

appellants to empty their refuse on appellees' premises. 103 Ark. 270; 119 *Id.* 169.

12. The injunction should have been made permanent after a reasonable time to repair. *Supra.* The nuisance was continuing and grew more aggravated. 102 Ark. 288. This case is not different from 119 Ark. 169. The evidence established every fact proved in that case. Where a nuisance is proved, it is no defense that it was produced scientifically or carefully operated. 102 Ark. 288. The fact that sewers are necessary, and that the statute directs that they follow as far as possible the natural drainage, does not justify a city in discharging sewers into a stream to the damage of land owners. 155 Mo. 283; 119 Ark. 169; 113 *Id.* 442; 68 Conn. 263; 70 *Id.* 435; 39 Atl. 796; 9 Col. App. 828; 48 L. R. A. 691; 71 Hun. 232; 1 Wood on Nuisances (3 Ed.), § 434.

13. The decree here is not fatally defective; it is definite enough. 119 Ark. 169.

On the whole case no prejudicial errors appear.

WOOD, J. This action was instituted by the appellees against the appellants to restrain the latter from maintaining a nuisance.

The complaint in substance alleged that the city of Siloam Springs had been organized into one improvement district known as Sewerage District No. 1, for the purpose of constructing and maintaining a general sewer system therein; that a board of improvement was appointed, which board proceeded to construct and maintain a general sewerage system in Sewerage District No. 1; that it had extended the mains from the sewerage district to and adjoining the residences of the plaintiffs, who lived beyond the corporate limits of the city and beyond the sewerage district; that beyond the corporate limits of the city of Siloam Springs the defendants maintain a disposal plant which sprays noxious odors in the air and discharges the sewage from the sewerage district into a stream of fresh, pure water running through plaintiff's farms; that by such acts the stream is polluted so as to

make the water unfit for animal or human use, and is filled with noisome smells and nests or beds for the incubation of mosquitoes; that the defendants sprayed the sewage in a liquid form in the atmosphere near plaintiffs' dwelling, causing corruption of the atmosphere, noisome smells, flies, and mosquitoes; that by these acts the homes of plaintiffs are rendered disagreeable, uncomfortable and uninhabitable; that, by thus maintaining the sewerage disposal plant, the defendants have created a nuisance to the injury of plaintiffs which cannot be measured by monetary value; "that defendants by reason of their careless indifference, criminal, and reckless maintenance of the sewerage disposal plant have caused. plaintiffs great physical annoyance and discomfort;" that such acts are continuous and recurring.

They further alleged that the defendants without exercising the law of eminent domain against the plaintiffs were appropriating without due process of law, the air and pure water of plaintiffs' farms and will continue to do so to the irreparable damage of plaintiffs unless restrained.

Plaintiffs alleged that they had no complete or adequate remedy at law and prayed that the defendants be perpetually enjoined from doing the acts and causing the conditions set forth in their complaint.

Demurrers to the complaint were filed and overruled, and the defendants answered denying specifically all its material allegations.

The defendants among other things set up in their answer that the sewerage system and disposal plant were constructed in accordance with the law, that the district was duly and legally formed, that the sewerage system and disposal plant were constructed by the most modern methods and by competent engineers and that same were being operated in a proper manner under the supervision of properly instructed employees and in accordance with the Board of Health, that the improvement was necessary for the public health of the general community.

The ruling of the court on the preliminary motions we deem it unnecessary to consider.

The material questions presented for our consideration are whether or not the court erred in its findings of facts and in the application of the law to those findings.

The court among other things found that the sewerage system and disposal plant were "managed, controlled, operated, and maintained jointly by the defendants," and that they were "so managed, maintained, and controlled as to constitute a nuisance."

The court further found that plaintiffs owned lands joining and in the vicinity of the disposal plant operated and maintained by the defendants; that flowing through the lands of L. W. Wallace and Anna Forrest is a stream of spring water with its source as the water supply of the city of Siloam Springs; that the defendants so operated and maintained its sewerage plant as to discharge the sewage into this stream, polluting its waters and making the stream unfit for animal or human use, thereby constituting a nuisance.

The court further found that the defendants by spraying the sewage in a liquid form in the atmosphere near plaintiffs' dwellings caused noisome smells, stenches, corruption of the atmosphere, flies, and mosquitoes; that the defendants by the above acts maintain a nuisance which rendered the enjoyment of the plaintiffs' farms, homes, and dwellings uncomfortable and uninhabitable to persons of ordinary sensibilities and depreciated their value as homes and places of abode.

The court further found that the operation and maintenance by the defendants of the disposal plant in the manner indicated had caused the plaintiffs great physical annoyance and discomfort and that the injury to the rights of the plaintiffs could not be measured by monetary value. That the operation and management by the defendants of its disposal plant was continuous and recurring, and that the plaintiffs had no complete and adequate remedy at law.

The court thereupon entered a decree perpetually enjoining the defendants "from so operating, managing, and controlling the disposal plant as to constitute a nuisance to the plaintiffs."

The testimony is exceedingly voluminous, and unless this opinion were extended to great length it would be impracticable to set it out and discuss it in detail. Indeed, such discussion would be of no use as a precedent.

Suffice it to say that the testimony on behalf of the appellees tended to prove that the sewerage system and disposal plant in connection therewith, situated outside of the corporate limits of the city of Siloam Springs, were constructed and maintained in such a manner as to discharge sewage of the city in a running stream which flowed through the farms of some of the appellees, thereby polluting the same and making it unfit for the use of human beings and domestic animals. That the stream was filled with noisome smells, that the sewage was so discharged as to cause nests or beds for the incubation of mosquitoes and flies, that the atmosphere was so polluted with noxious odors in such proximity to the appellees' homes as to make them uncomfortable and indeed uninhabitable to persons of ordinary sensibilities. Some of the witnesses described the odors as like rotten eggs or carcasses of decaying animals. One of the witnesses said "at times it was like a human body decaying;" others described the odor as "like a smell that comes from a toilet."

There was much testimony to the effect that the odors arising from the disposal plant and sewage discharge were so noisome as to render the condition of those who were subjected to them, exceedingly uncomfortable, indeed practically unbearable.

The testimony tended to show that the effect of the discharge from the disposal plant into the water of the running stream passing through the farms of some of the appellees was to cause slime all in the bottom at the disposal plant and to give the water a murky, milky appearance where it ran into the creek; that mosquitoes were

hatched there where the water ran out, and that wiggle-tails and mosquitoes were floating on the slime that was coming out of the sewerage plant.

Several witnesses stated that the water was dis-charged a few feet from the disposal plant into Sager Creek, the running stream which flowed through the farms of some of the appellees. That the water above where the discharge occurred was clear like any other running water, and that the water below contained "sludges of matter filthy looking like human sewage." The scum on some of the eddy places and on the rocks was an inch or two inches thick, which gave off a very offensive odor.

There was introduced on behalf of the appellees an analysis of samples of water taken from the stream above and below where the sewage from the disposal plant emptied into the same, made by the bacteriologist of the University of Arkansas. These samples showed that the sample of water above was in fair condition and not pol-luted while the same water from below was badly pol-luted with an intestinal type of bacteria.

One of the witnesses testified that during the sum-mer matter from the disposal plant collected at the out-let turns to a brownish color, then to a bluish black, which settles on the bottom of the creek and for rods be-low the outlet the stuff varies from two to ten inches deep, that he could trace the same all the way across his farm. That the substance broke loose from the bottom of the creek, came to the top and at times great quantities of it stayed on top of the water and green flies collected on it in great numbers during the hot weather. He said there was nothing of this kind above the disposal plant, toward the town. That the effect of this sewage in the water was such upon the milk stock and the production of milk from his farm that he would not dare to use it.

It was shown on behalf of the appellees by an expert, who was called to explain the method of the operation and maintenance of the sewerage system that the sewage from the city passed into a large tank where the natural

process of decay and decomposition goes on, liberating ammonia, carbon bisulphide and other gases which escape through a vent in the top of the tank. Says this witness: "The liquid part of the sewage passes out into troughs which are suspended in the air, from which the liquid (also containing particles held in suspension) sprays onto a comparatively shallow bed of stone, liberating more gases into the air as it does. The solid part of the sewerage settles in the bottom of the large tank and by the means of valves is thrown into a shallow, open tank to be dried in the sun. The plant generates very noxious odors which can be smelled on all of the farms of the plaintiffs." The witness described the smells as follows: "These gases not only have the pungent and disagreeable smell of ammonia and sulphur compounds but in addition there is a sickening, nasty odor that has on more than one occasion made me sick at my stomach when I was more than one-half a mile from the plant. This witness further testified that the liquid part of the sewage contained matter in solution and also particles held in suspension mechanically is discharged in the creek, and furnished food for the growth of the organisms in the water." He stated that animals drinking the water from the creek would become poisoned from the great quantity of bacteria present, and that the water nitrates growing in the sewage so contaminated the stream that animals wishing the water would have to become very thirsty before they drank of the same, which was very hard on them. That the milk from animals having access to the contaminated stream would be unfit for food. This witness further states that he had observed millions of mosquitoes breeding into the slimy places where the sewage entered into the creek; that the community had never been bothered with mosquitoes before the construction of the disposal plant. He further testified to the deleterious effect that the drinking of the water had had on the domestic animals.

On the other hand, the testimony of the witnesses on behalf of the appellants tended to prove that the sew-

erage system was constructed under the supervision of civil and hydraulic engineers who had installed sewerage plants in towns and cities in Oklahoma and Arkansas and who had had an experience of many years in the construction and operation of sanitary sewerage systems; they adopted for the city of Siloam Springs what is designated as "the modified Imhoff design," which is declared by an eminent engineer and sanitary expert of New York City as the best device for the clarification and purification of sewage sludge in existence; that the plant at Siloam Springs was properly constructed in accordance with the latest methods of engineering of the kind.

The witness goes into detail in explaining the plans and specifications and the method of construction as well as the operation and maintenance of the plant. The plant cost $55,000. The testimony of this witness in short was to the effect that the plant had been properly constructed and was then being operated and maintained in such a manner as not to create a nuisance.

Another witness, one Baldwin, who was the chief of the fire department of Siloam Springs and the plumbing and sanitary inspector who had had charge of the sewerage plant for the last year or so stated that the plant was in good condition; that there was very little odor; that there was a crack on the west side that ran out some on the ground but that there was not a great deal of odor. He was employed by the city to see that the sewerage system was in working order and was also working for the sewerage district. He was paid by both.

The testimony of the members of the board of the sewerage improvement district was all to the effect that the plant was constructed according to the most approved, up-to-date methods, and that it was being operated and maintained in such a manner as not to create a nuisance.

One of the members of the board testified that the board of the sewerage improvement district was not then operating the plant, but his testimony further showed

that there had been no action by the board turning the plant over to the city, and that the board had in its employ a man by the name of Baldwin to keep the plant in working order.

Many witnesses for the appellants corroborated the testimony of the engineer and of the members of the board of the improvement district to the effect that the plant was constructed and was being operated in such a manner that no nuisance was created.

The testimony on behalf of the appellees and of the appellant is in such decided conflict, and there were so many witnesses testifying both for the appellees and appellants, that we have had great difficulty in determining where the preponderance lies. A majority of the. court has reached the conclusion that the findings of fact by the chancellor are not against the clear preponderance of the evidence.

The law applicable to the facts as thus found is announced by this court in the case of *Jones* v. *Sewerage Improvement District No. 3 of Rogers,* 119 Ark. 169, where the facts were quite similar to the facts of this case.

There is no essential difference between the facts of the above case and the case at bar, which calls for the application of a different rule. That was a thoroughly considered case and announces the sound doctrine. We there said: ''The right to construct sewers and. drains implies no right to create a nuisance, public or private. It is the duty of the commissioners of the sewer district to construct the sewer so that it will not become a nuisance to any neighborhood or to any particular inhabitant thereof; and it is the duty of the city after the sewer has been turned over to it to avoid the same result by properly maintaining and repairing the sewer after it is constructed. * * *''

''After a careful consideration of the whole record we are of the opinion that the clear preponderance of the evidence shows that the sewer system was operated and maintained in such a way as to constitute a nuisance.

Our statute authorizing cities and towns to form improvement districts for the construction of a system of sewers did not intend to authorize the creation of a nuisance. * * *''

''The action of the defendants in negligently maintaining the sewer approximately and efficiently contributed to the nuisance. Thus the fundamental basis of all equity jurisdiction in tort manifests itself and the right of the plaintiffs to equitable relief is clear and indisputable.''

In addition to the authorities there cited, see the following to which our attention has been directed in brief of counsel for appellees. These we have examined and find that they sustain the doctrine announced in *Jones* v. *Sewer Imp. Dist. No. 3 of Rogers, supra:* 1 Wood, Nuisances (3 Ed.), § § 434-5; *Suffolk Gold Mining & Mill Co.* v. *San Miguel Consol. Min. & Mill Co.,* 9 Col. App. 407, 48 Pac. 828; *Platt Bros. & Co.* v. *Waterbury,* 48 L. R. A. 691, and notes; *State of Kansas* v. *City of Concordia,* 20 L. R. A. (N. S.) 1050, and case notes.

The trial court, therefore, was also correct in overruling the demurrer to appellees' complaint. The complaint stated facts which, if true, showed that appellants had created and were maintaining a nuisance. The appellees, after stating such facts, then averred that appellants, without exercising the right of eminent domain, were taking and damaging the property of the appellees without due process of law.

It might be stated in passing that it was developed in the proof at the hearing that one of the appellees had sought to recover against appellants damages in an action at law which appellants successfully resisted.

The complaint further alleged that the acts complained of as constituting the nuisance were continuous and recurring and that appellees had no complete and adequate remedy at law. The demurrer as well as the answer of appellants show that their whole defense was bottomed upon the theory and contention that they were authorized by law to construct the sewerage system,

which they had done according to the best methods, and that same was being properly maintained; that as thus constructed and maintained no nuisance to appellees was in fact created, but that, even if the appellees, or some of them, were subjected to the inconvenience, annoyance, and discomfort of which they complained, appellees' sole and only remedy is at law where such remedy would be adequate and complete.

It is well settled that under our Constitution (article 2, section 22), private property can not be taken, appropriated or damaged for public use without just compensation therefor. *Hot Springs R. R.* v. *Williamson*, 45 Ark. 429. See also *City of Hope* v. *McLaughlin*, 107 Ark. 442; *City of El Dorado* v. *Scruggs*, 113 Ark. 239.

If the appellants were contending that the exigencies of the public health of the city of Siloam Springs required that they appropriate appellees' property to the use of the public for sewerage purposes under the authority of section 5664 of Kirby's Digest, and that in the use of such property by appellants for such purposes the appellees would necessarily be damaged, then appellants would be correct in their contention. Because, if that were the case, appellants would have a complete and adequate remedy at law. *McLaughlin* v. *City of Hope*, 107 Ark. 442; *City of El Dorado* v. *Scruggs*, 113 Ark. 239, *supra*. See also *Swaim* v. *Morris*, 93 Ark. 362. But such is not this case. The complaint alleges and the proof shows that appellants were not asserting, under the doctrine of eminent domain, any right to take or damage appellees' property for the benefit of the public. On the contrary, the appellants were proceeding entirely on the theory that in the construction and maintenance of the sewerage system it was not necessary to take or damage any of the property of the appellees, and that appellees' property in fact was neither taken nor damaged. As before stated, appellants in this case grounded their whole defense on the theory that the sewerage system was constructed and maintained so as not to create a nuisance.

The appellees, in the opinion of the majority of this court, by a preponderance of the evidence have proved that a nuisance was created. It was not incumbent upon appellees to make this proof by showing the manner in which the sewerage system was constructed, or the methods by which it was maintained. Appellees have met the burden of proof when they show by a preponderance of the evidence the existence of a nuisance and that the proximate cause of such nuisance was the sewerage system which appellants had constructed and were maintaining.

The appellants undertook to overcome this testimony on behalf of the appellees by testimony to the effect that the sewerage system had been constructed and was being maintained according to the most up-to-date and approved methods, and that as thus constructed and maintained a nuisance would not be created. It was within the province of the appellants to produce such testimony. Therefore, the issue as to whether a nuisance was in fact created and continued to exist at the time of the institution of this action was one depending upon the credibility of the witnesses and the weight to be given their testimony. It did not devolve upon appellees to point out to appellants the defects in construction or maintenance that caused the nuisance. Having proved the existence of the nuisance and that the appellants caused the same, the matter of the correction and abatement thereof must rest on the appellants.

Since the testimony showed that both the sewerage district and the city were maintaining the nuisance, the chancery court was correct in granting the relief sought both against the district and the city. In this respect the directions follow the suggestions in *Jones* v. *Sewer Improvement Dist. No. 3 of Rogers, supra,* as to the proper form of decree where both the district and the city are parties and both responsible for the maintenance of the nuisance.

The decree is affirmed.